THORNSBERRY *v.* STATE.

Crim. 3978

Opinion delivered March 16, 1936.

436

*K. T. Sutton,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

BUTLER, J. The appellant was indicted for the crime of rape, convicted for carnal abuse and sentenced to imprisonment in the State penitentiary for ten years.

No bill of exceptions was prepared and filed, and on appeal the sole question we are asked to review is the alleged error of the trial court in refusing to set aside the verdict of the jury and grant the appellant a new trial. The motion for a new trial was based upon the alleged fraud of a juror in failing to disclose his bias and prejudice when being questioned on his *voir dire* as to his acquaintanceship and relation to the father of the prosecuting witness.

As before stated, we have no bill of exceptions showing the examination of the juror on his *voir dire,* and this was attempted to be supplied by the testimony of the appellant, and one of his attorneys as to what occurred at the juror's examination and the testimony of other witnesses as to the relationship and acquaintance of the juror to the father of the prosecuting witness. This testimony tends to show that during the year 1927 the juror, a Mr. Pitts, lived about three-quarters of a mile from Mr. Compton, the father of prosecuting witness; that he occasionally attended a church in that neighborhood which was also attended by Mr. Compton and his family. It was also shown that a son of the juror had married the daughter of one Shirley, and that a daughter of Compton had married into the same family— perhaps marrying a son of Shirley.

The appellant, being called to testify as to what occurred during the examination of the juror, Mr. Pitts, was asked by counsel if this question was propounded to Mr. Pitts: "Are you connected with, related or associated in any manner with the Compton family, either in a social way, business way, or otherwise?" The answer was "yes," and he was then asked what Mr. Pitts answered, and he stated that it was "no." According to this witness Pitts was also asked: "Is your acquaintance, if any, with the Compton family, or your connection with any members of the Compton family, such as would, in any way, affect you in the proper and fair deliberation of this case?" and to this question Pitts answered "no." He also stated that Mr. Pitts was asked if he was in any manner related, by blood or marriage, to the Compton family, and that he answered that he was not. One of appellant's attorneys testified practically to the same effect as the appellant as to what occurred at the *voir dire* examination of Mr. Pitts.

Pitts was called and testified that as he remembered the examination he was asked if he was acquainted with the Comptons and the Thornsberrys, and he answered that he was. He was also asked if he was, in any way, related to them, and answered that he was not; and that he barely knew them when he saw them. He stated that the fact that one of the Comptons had married into the Shirley family, and one of his boys into the same family did not, in his opinion, create any relationship on his part to the Compton family; that he had no bias or prejudice and did not intentionally conceal any facts on his examination, but answered the questions propounded fairly and truthfully.

To us this appears to be the effect of Pitts' testimony on the hearing for a new trial. He was asked if, immediately after the verdict, he did not rush up to Mr. Compton and congratulate him upon the verdict the jury had returned. He answered that he did not, but that while looking for his son he met Mr. Compton and shook hands with him, but did nothing more.

It is clear, giving the testimony the effect most favorable to the appellant, that the juror Pitts was not dis-

qualified under § 3160 of Crawford & Moses' Digest. The fact of the intermarriage of members of the Compton family with the Shirley family, a son of Pitts having also married a member of the Shirley family, did not create the relation of affinity to the prosecuting witness or any member of her family. The proceeding was in the nature of a new trial for newly-discovered evidence. The trial court has wide discretion in passing on motions for a new trial in such matters, and we cannot say that such discretion was abused in the overruling of the motion in the instant case.

We note in the statement of the appellant that he moved the court to require the reporter to transcribe the testimony, and this motion was refused. Court stenographers are usually paid salaries which are supposed to compensate them for their duties in taking the testimony in criminal cases and preparing bills of exception. When they fail or refuse to do this the circuit court, on proper application, should compel the performance of this duty. This court has held that application must be made first to the trial court for an order to compel the performance of the stenographer's duty. *Sutton* v. *City of Little Rock*, 191 Ark. 603, 87 S. W. (2d) 20. In this case, from the statement of appellant, it appears that he made this application, but his remedy, on the refusal of the trial court to compel the stenographer to perform his duty, was by application to this court for review of the action to the court below. We make these observations simply for the purpose of indicating that defendants, regardless of how poor they may be, are entitled to a record of the proceedings in the court below to the end that those proceedings may be intelligently reviewed by this court, and the remedy is ample to compel the court stenographer to prepare a bill of exceptions for authentication by the trial court.

We have examined the record, and as no error appears on the face thereof, the judgment is affirmed.