BLACKARD *v*. KOLB.

4-8327                                          205 S. W. 2d 857;

Opinion delivered November 17, 1947.

Rehearing denied December 15, 1947.

*J. H. Brock, Linus A. Williams* and *Wiley W. Bean,* for appellant.

*J. D. Bartlett, W. J. Morrow, Geo. Patterson* and *J. M. Smallwood,* for appellee.

ED. F. MCFADDIN, Justice. This is an election contest; and the controlling question on this appeal is whether the appellant Blackard was a qualified elector

of Johnson county, Arkansas, on November 5, 1946, within the purview of our poll tax law. We hold that he was; and Act 155 of 1943 is our authority for such holding.

The facts regarding Blackard's status are these: Prior to his entry into the armed forces of the United States he was a resident of Johnson county. He received his honorable discharge from the Army on November 14, 1945, and immediately returned to Johnson county, and has resided there ever since. In February, 1946, he purchased a poll tax receipt under the provisions of Act 155 of 1943. This was evidently a 1944 poll tax receipt, and its regularity is not questioned on this appeal. A 1944 poll tax receipt was required for voting at any election held between October 1, 1945, and October 1, 1946.

In order to vote at any election held from October 1, 1946, to October 1, 1947, Blackard was required by law to have a 1945 poll tax receipt. On September 14, 1946, Blackard delinquently assessed his 1945 poll tax before the assessor, and went immediately to the tax collector's office, where he paid $1.00 and received his 1945 poll tax receipt bearing this notation: "If paid on or before October 1, 1946, will entitle the taxpayer, if otherwise qualified, to vote at any election held in this State prior to October 1, 1947."

It is admitted that the assessor did not certify the delinquent assessment to the County Clerk, and that the County Clerk did not certify the supplemental assessment to the collector, as required by Act 37 of 1941. Because of this latter omission, it is claimed by appellee that Blackard was not a qualified elector on November 5, 1946. Appellee cites, in support of his contention, § 4695, Pope's Digest, and a number of our cases, of which the following are a few: *Cain* v. *Carl-Lee,* 168 Ark. 64, 269 S. W. 57; *Taaffe* v. *Sanderson,* 173 Ark. 970, 294 S. W. 74; *Collins* v. *Jones,* 186 Ark. 442, 54 S. W. 2d 400; *Martin* v. *Gray,* 193 Ark. 32, 97 S. W. 2d 439; *Trussell* v. *Fish,* 202 Ark. 956, 154 S. W. 2d 587; *Wilson* v. *Luck,* 203 Ark. 377, 156 S. W. 2d 795; *Stephens* v. *O'Neal,* 210 Ark. 570, 196 S. W. 2d 917. In the last-cited case we said: "We

have many times held that to be a qualified elector one must both assess and pay his poll tax in the manner provided by law."

But, irrespective of the foregoing authorities, Blackard's 1945 poll tax receipt was valid under Act 155 of 1943 (hereinafter referred to as "Act 155"). It is captioned: "An Act to Allow Men and Women in the Armed Services of the United States to Vote, If Otherwise Qualified, Without Assessing for Poll Tax If They Are Discharged or Returned From Service After the Time for Assessing Has Expired." Section I says:

"Any man or woman who has been discharged or has returned from service in any branch of the armed service of the United States shall be entitled to secure a poll tax at any time before the date of any election held *before the next succeeding time for assessing shall close* by presenting to the Sheriff and Collector or Collector as the case may be his affidavit showing such service in the armed forces, his discharge from such service and the date of his return to his voting precinct." We have italicized the words "before the next succeeding time for assessing shall close," because they are the words that caused the circuit court to make the ruling which we now reverse.

Viewing this statute in the light of the law existing prior to its passage, and giving the statute the effect which it seeks to accomplish, we think that the italicized words refer to the time for *regularly assessing in the next poll tax year*; and do not limit the right of the veteran to pay for and obtain a poll tax receipt—without assessment—for the year in which the regularly assessing period had expired prior to the time of the veteran's discharge. We emphasize that the act means *time for regularly assessing,* and does not mean *time for delinquently assessing*; for, otherwise, the act would not facilitate in any way the veteran's opportunity to become a qualified elector. He is not required to assess delinquently. He is relieved from assessing.

With the italicized words construed as just stated, it is clear that § I of Act 155 means: that, if a veteran returns from the service too late to assess *regularly* for a poll tax, then such veteran, by making proof (to the collector) of his veteran status, date of return and precinct, may—at any time before any election—pay the collector $1.00 and receive a valid poll tax without being obliged to assess delinquently.

Applying this statute—as so construed—to the case at bar, we have this situation: Blackard returned from the service on November 14, 1945. He had ample time (*i. e.,* from the first Monday in January, 1946, to the third Monday in August, 1946,—as fixed by § 13683, Pope's Digest) in which to assess *regularly* his 1946 poll tax which, if thereafter paid before October 1, 1947, would have qualified him to vote in any election held between October 1, 1947, and October 1, 1948. Thus, Act 155 would not relieve Blackard of assessing his 1946 poll tax. But when Blackard returned from the service on November 14, 1945, the time *had already expired* in which he could have *regularly* assessed his 1945 poll tax (on which he would vote from October 1, 1946, to October 1, 1947), because the time for *regularly* assessing that poll tax was from the first Monday in January, 1945, to the third Monday in August, 1945—as fixed by § 13683, Pope's Digest. In such situation, Blackard could invoke in his favor the provisions of Act 155, and make proof (to the collector) of his veteran's status, date of return and precinct, and pay his $1.00, and receive from the collector a 1945 poll tax receipt, and thereby become a qualified elector for the period from October 1, 1946, to October 1, 1947,—insofar as concerned the requirements for assessing and paying his poll tax. That is exactly what he did. It is true that he also appeared before the assessor, and delinquently assessed. But such was entirely unnecessary, and this unnecessary delinquent assessment cannot be used to defeat his rights under Act 155.

Appellee makes several contentions, which we now list and discuss:

1. It is argued that Blackard had obtained in February, 1946, a poll tax receipt (valid to October 1, 1946), under this Act 155; and therefore Blackard could not invoke the Act a second time. But we find nothing in the Act that limits a veteran to only one use thereof. Section I says that he can obtain a poll tax receipt "at any time." The Act must be so construed as to facilitate a veteran's exercise of franchise, and therefore is not limited to one instance, when the facts—as here—permit two instances.

2. It is argued that Blackard did not, on September 14, 1946, tender to the collector the affidavit required by § I of the Act. This contention is true; but there is no showing in this record that Blackard did not make the affidavit when he obtained his poll tax receipt under this Act in February, 1946. In the absence of a showing to the contrary, we must presume that the collector complied with the law in February, 1946; and if an affidavit was filed then, it would suffice for the issuance of the subsequent poll tax receipt on September 14, 1946.

3. It is argued that the collector did not stamp on the poll tax receipt issued on September 14, 1946, the language required by § II of Act 155 to be so noted on the receipt. This is true; but such omission by the officer could not defeat the elector's right of suffrage. In *Henderson* v. *Gladish*, 198 Ark. 217, 128 S. W. 2d 257 (in speaking of a poll tax receipt issued by an officer who did not comply with the requirement that the receipt be written in pen and ink), we said:

"To hold that one who has complied with the law by regular payment of the tax, but who becomes the victim of a careless, a designing, or an uninformed collector or deputy, would have the effect of completely disregarding the primary qualification of an elector, which, as has been shown, is the *actual timely payment of the tax*."

*Conclusion*: In the excellent briefs filed by both sides, many interesting questions are presented. We are urged to discuss the constitutionality of any act requiring the assessment of poll tax, and we are urged to discuss the rule of substantial compliance regarding delinquent

assessments: but we find it unnecessary to discuss any of these matters, because Act 155 is the governing Act in this case. We do, however, think it proper to call attention to the fact that the matters herein arose before the effective date of Act 220 of 1947,[*] so we have not considered that Act in this decision.

The judgment is reversed, and the cause is remanded, because the circuit court erred in holding that the appellant Blackard was not a qualified elector of Johnson county, Arkansas, on November 5, 1946, within the purview of the poll tax law.

---

[*] Act 220 of 1947 is entitled: "An Act to Eliminate the Necessity of Assessing Poll Taxes for Voting Purposes: Amending Sections 4696 and 4699 of Pope's Digest of the Statutes of Arkansas, as Amended by Act 82 of the Acts of 1939, and for Other Purposes."