Beene *v.* County Board of Education, Columbia County.
4-9266                                     231 S. W. 2d 594

Opinion delivered July 3, 1950.

554

S. E. Gilliam, Melvin T. Chambers, Wade Kitchens and W. H. Kitchens, Jr., for appellant.

McKay, McKay & Anderson, for appellee.

ED. F. McFADDIN, Justice. This appeal stems from the efforts of two School Districts to consolidate and thereby avoid the effects of Initiated Act No. 1 of 1948,[1] since, united, the two Districts would have had more than 350 pupils. The Districts, both in Columbia County, were Atlanta School District No. 9 (hereinafter called "Atlanta"), and Calhoun District No. 3 (hereinafter called "Calhoun").

On November 30, 1948, a petition was filed with the Columbia County Board of Education, purporting to contain the signatures of a majority of the qualified electors of the Atlanta District, and praying that Atlanta be dissolved and its territory annexed to Calhoun, whose School Board had duly certified consent to such annexa-

[1] The text of this Act may be found on Page 1414, et seq., Acts of Arkansas 1949. The Act was considered in Stroud v. Fryar, 216 Ark. 250, 225 S. W. 2d 23, and County Board of Education v. Norfork School District, 216 Ark. 934, 228 S. W. 2d 468.

tion. This proceeding was under Ark. Stats. § 80-408, as modified by § 80-418.[2] The County Board duly advertised that the date of the hearing on the petition would be January 20, 1949; and at the meeting on that date, a number of the petition signers, by written demand, had their names removed from the petition, as provided by said § 80-408. With such names removed, the County Board found that the names remaining were less than a majority of the qualified electors of the Atlanta District; and, accordingly, the County Board dismissed the petition.

Appellants then appealed to the Circuit Court where there was a lengthy trial on the question of whether the names remaining on the petition constituted a majority of the qualified electors of the Atlanta District. The Circuit Court found that there were 138 qualified electors in the Atlanta District; and that the petition contained the names of only 68 qualified electors. Accordingly, the Circuit Court dismissed the petition. Appellants bring the case to this Court and claim that the Circuit Court was in error: (I) in holding certain persons to be qualified electors; (II) in refusing to allow certain names to be restored to the original petition; and (III) in holding other names properly stricken from the original petition. We consider these contentions:

I. *Holding Certain Persons to Be Qualified Electors.* Section 80-408 Ark. Stats. says that the number of qualified electors " . . . shall be determined as of the date said petition is considered by said county board of education, . . ." The County Tax Collector produced the list of all persons who had paid poll tax in the Atlanta District from October 2, 1947, to October 1, 1948. The Court then proceeded to add the names of others shown to be qualified electors, and to strike from the poll tax list the names of some shown to have abandoned residence.

---

[2] Sec. 80-408 says: ". . . majority of qualified electors of each district . . .," wheres Act 235 of 1947 (now found in Sec. 80-418 Ark. Stats.) merely requires the majority of the dissolving District, and the consent of the Board of Directors of the annexing District. The latter was the procedure here. See *Austin School District* v. *Young,* 212 Ark. 75, 204 S. W. 2d 902, and *Wallace School District* v. *County Board of Education,* 214 Ark. 436, 216 S. W. 2d 790.

A. *"Maiden Voters."* To the list of qualified electors, the Court added three "maiden voters"—*i. e.,* those who recently became of age. They were: T. C. Ware, who became twenty-one years of age on December 8, 1948; Thurston Ware, who became twenty-one years of age on May 21, 1948; and Curtis Lee Wyrick, who became twenty-one years of age on December 22, 1948. We hold that the Circuit Court was correct in holding each to be a qualified elector. Amendment No. 8 to our Constitution says: " . . . persons who make satisfactory proof that they have attained the age of twenty-one years *since the time of assessing taxes next preceding said election,*[3] and who possess the other necessary qualifications, shall be permitted to vote." Under § 84-414, *et seq.,* Ark. Stats., the " . . . time for assessing taxes next preceding . . . " January 20, 1949, expired on April 10, 1948. Each of these three young men became twenty-one years of age after April 10, 1948, so under the constitutional provision they were qualified to vote upon making proof of such fact and possessing the other necessary qualifications. Such proof was made. The fact that Act 220 of 1947[4] abolished the requirement of assessing poll tax does not change the plain constitutional language, as above quoted. In short, any person being otherwise qualified and becoming twenty-one years of age after April 10, 1948, would be entitled to vote without poll tax until October 2, 1949.

B. *School Patrons Who Had Transferred Out of the District.* Wade Jermany and six other residents of the Atlanta District had transferred their children to other School Districts; and appellants claim that because of such transfers these seven persons were not qualified electors in the Atlanta School District. *Jones* v. *Floyd,* 129 Ark. 185, 195 S. W. 360, is against the appellants' contention. In that case we held that Howard County residents who had transferred their children to a Pike County School District could *not* vote in the Pike County School District election; and we said:

---

[3] Italics our own.
[4] See *Blackard* v. *Kolb,* 212 Ark. 332, 205 S. W. 2d 857.

"Residence is, therefore, an essential prerequisite without which one cannot become qualified to vote, and this residence must be in the county in which he proposes to vote, and in the precinct, town or ward in which he proposes to vote. He can vote where he resides and not elsewhere."

In the case at bar, Wade Jermany and each of the other six "transfers" resided in the Atlanta District and had duly paid poll tax; and each was a qualified elector in the Atlanta District: and the Circuit Court was correct in so holding.

C. *Actual Residence of Certain Poll Tax Payers.* Appellants claim that each of six named persons—being Dr. Horace Beene, Mrs. Horace Beene, Bruce Hendricks, Mrs. Bruce Hendricks, A. C. Shepherd and Felton Robinson—was not a qualified elector in the Atlanta District, even though each had a poll tax. Appellants sought to show that each such person was not an actual resident of the Atlanta District on January 20, 1949, the date of the hearing before the County Board of Education.

We have carefully checked the transcript as to each of these six named persons; and we find that no exception was preserved by appellants to the ruling of the Court at the time the Court held each of the six to be a qualified elector. The procedure in the case was as follows: (a) the Court heard the evidence as to each challenged person; and (b) immediately and finally ruled as to each such person. At such time appellants saved no exception to the Court's ruling; and in the absence of a seasonable exception, there is nothing for us to review. See *St. Louis, I. M. & So. Railway Co.* v. *Brown,* 100 Ark. 107, 140 S. W. 279; *Jenkins* v. *Quick,* 105 Ark. 467, 151 S. W. 1021; *Cotner* v. *Bangs,* 137 Ark. 394, 209 S. W. 80; and *Alldread* v. *Mills,* 211 Ark. 99, 199 S. W. 2d 571. In 3 Am. Jur. 51, the rule is stated: "As a general rule an exception to a ruling should be taken at the time the ruling is made"; and in 4 C. J. S. 760, the text says: "In order to be effective in saving error for consideration on appeal, exceptions taken to proceedings during trial must be timely."

It was not until after the tabulation and announcement of the Court's final decision, on the following day, that appellants sought—and then in a general or "blanket" remark—to except to the Court's ruling regarding any of these six persons. Such attempt came too late. Appellants had apparently acquiesced in each ruling made by the Court; and it was not until the final count disclosed a result adverse to them that appellants sought to "back up" and except to the rulings which had previously been unquestioned. Because of the failure to register timely exceptions, we hold that the question of the residence of each of these six challenged voters is not properly before us.

II. *Refusing to Allow Certain Names to Be Restored to the Original Petition.* S. J. Chisholm and three other persons signed the original petition for the annexation of Atlanta to Calhoun, but at the hearing before the County Board of Education they asked to have their names removed from the petition, as allowed under § 80-408, Ark. Stats.; and the names were so removed. When the case was tried in Circuit Court, S. J. Chisholm and the other three persons sought to have their names restored to the original petition, and offered proof that they had been defrauded in having their names removed. A consideration of the evidence indicates that it was more a case of persuasion than fraud by the last group who "contacted" each of the four parties. The Statute and the cases hold that no name can be restored to the petition after the hearing before the County Board of Education. See *Dansby School District* v. *Haynes School District,* 210 Ark. 500, 197 S. W. 2d 30. So under the facts here presented, the cited case is full authority for the Circuit Court's ruling which refused to restore the names of S. J. Chisholm and the other three parties to the annexation petition in the trial in the Circuit Court, since the names had been duly stricken prior to the hearing before the County Board.

III. *Holding Other Names Properly Stricken From Original Petition.* Finally, appellants claim that eleven names were stricken from the original petition without any proof that the signatures were genuine on the with-

drawal instrument. The situation was as follows: Lillian Carter and ten others had signed the original petition for annexation of Atlanta to Calhoun, but at the hearing before the County Board these eleven had their names removed from the petition by written instrument of withdrawal, in accordance with said § 80-408 Ark. Stats. When the case was tried in Circuit Court, it was stipulated that each and every signature on the original annexation petition was genuine; but appellants say that there was no such stipulation as to the genuineness of signatures on the withdrawal instrument: and so appellants further claim that these eleven names should not have been considered as withdrawn from the original annexation petition. To support their argument, appellants quote from *Scott* v. *County Board of Education,* 182 Ark. 472, 31 S. W. 2d 736, which in turn quoted from an earlier case:

" 'The court properly eliminated from its consideration a petition . . . because there was no competent testimony that the names thereon were genuine signatures of electors residing within the district.' " *Hughes* v. *Special School District,* 135 Ark. 454, 205 S. W. 824.

In making their said contention, appellants appear to lose sight of the fact that the signatures on the original annexation petition were stipulated to be genuine. With those admittedly genuine signatures before it, the County Board in the first instance—and the Circuit Court on appeal—had only to compare a signature on the withdrawal instrument against the admittedly genuine signature of the same person on the original annexation petition. Thereby it was possible to determine the genuineness of the signature on the withdrawal instrument. Appellants have not called our attention to any place in the transcript where any question was raised in the Circuit Court as to any signature being other than genuine; but even if such issue had been presented, the stipulation as to the genuineness of signatures on the original annexation petition supplied the proof from which the Circuit Court could have verified—and evidently did verify—the signatures on the withdrawal instrument.

## CONCLUSION

Appellee has also urged: (a) that there was no appealable order made by the County Board of Education; and (b) that the Statute (§ 80-408 Ark. Stats.) does not contemplate an appeal from the County Board's finding that the annexation petition contained an insufficient number of signatures. We have not considered these contentions, because we are convinced that, at all events, the appellee should prevail on the fact that the petition for annexation contained an insufficient number of signatures. Therefore, the judgment of the Circuit Court is affirmed; and for good cause shown an immediate mandate is ordered to issue.